B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT    District of Delaware | PROOF OF CLAIM |
|---|---|

Name of Debtor: **MUZAK HOLDINGS LLC**   Case Number: **09-10422** (KJC) JOINTLY ADMINISTERED

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): **NAKAHILI PRODUCTIONS**

☑ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent: **PALANI VAUGHAN (SOLE-PROPRIETOR) NAKAHILI PRODUCTIONS PO BOX 1617, HONOLULU, HI 96806**

Court Claim Number: _____
(*If known*)

Filed on: _____

Telephone number: **(808) 330-1733**

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ **SEE CREDITOR'S 1st LTR TO COURT** **2nd LTR TO COURT 10/09/09 : 7/28/09**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** _____
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $_____  **Annual Interest Rate** ___%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____  **Basis for perfection:** _____

**Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Date: **10/14/09**  Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Palani Vaughan* **PALANI VAUGHAN, JR (SOLE-PROPRIETOR)** **NAKAHILI PRODUCTIONS**

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## Palani Vaughan, Jr.
### Sole-Proprietor, Nākāhili Productions
## Probable Creditor
RE: Chapter 11, Muzak Holdings LLC, Debtors,
Case No. 09-10422 (KJC) (Jointly Administered)

PO Box 1617
Honolulu, HI 96806
(Cell) 808-330-1733
nakahiliprdctns@aol.com

**THIS CREDITOR'S COVER LETTER**  Tuesday, October 13, 2009

The Honorable Kevin J. Carey, Chief Judge
US Bankruptcy Court For The District of Delaware,
757 Third Avenue, 3rd Floor, New York, NY 10017

Re: Chapter 11, Muzak Holdings LLC, Debtors, Case No. 09-10422 (KJC) (Jointly Administered);

Your Honor Judge Carey,

This Creditor wishes to inform The Court of This Creditor's recent unsuccessful attempts in the recent days, to mail This Creditor's Second-Letter to The Court, dated Friday, October 9, 2009.

In reality, This Creditor has been writing this Second Letter to The Court since August 8th, but, in preparing said Second-Letter, This Creditor has labored over researching evidentiary "discoveries", and organizing and preparing said evidentiary submissions to The Court, and has experienced the greatest of challenges in composing and writing said Second-Letter to The Court, which had reached enormous proportions, at one point, numbering 50 pages in length.

This Creditor was determined to reduce the number of total pages of said letter and began to assemble said letter on Friday October 9th but failed to complete said letter that same day.

Therefore, This Creditor's labors over said Second Letter to the Court extended into Saturday, October 10th, involving nearly thirteen [13] consecutive hours on the computer and printer.

After, finally, completing the printing of said letter late that afternoon, This Creditor drove the normal 40-minutes distance to the Honolulu International Airport Post Office, to mail said Second Letter to The Court.

However, This Creditor miscalculated certain unexpected delays caused by traffic surrounding the *Aloha* Stadium where local fans had gathered for a University of Hawai'i football game, which game This Creditor had forgotten was underway at the stadium.

The freeway corridor that This Creditor had decided to take to the Post Office, unfortunately, also lies in the path of the The *Aloha* Stadium.

As a result, This Creditor arrived at the Post Office just as it was closing its doors.

Forced to wait, This Creditor didn't realize that, Monday, October 12th, was a Federal holiday, and the Post Office was closed.

While This Creditor intended to mail said Second-Letter to The Court, on Tuesday, October 13th, however, This Creditor engaged in discussions with a business-acquaintance, referred to, in said Second Letter, who raised a legal question, which This Creditor, determined needed to be asked of The Court.

However, while This Creditor worked on incorporating said legal question in said Second Letter to The Court, This Creditor was contacted by the Attorney representing This Creditor in the active court-case, to which This Creditor referred in This Creditor's July 28th, First Letter to The Court, to notify This Creditor that the presiding Judge in said active-case, has scheduled a Court-Hearing tomorrow morning, which Court-Hearing This Creditor was requested to attend.

Said notification has caused, yet, another day's delay for This Creditor in completing said Second Letter to The Court, as This Creditor was compelled to reschedule other business meetings, already, planned for tomorrow.

This Creditor writes this Cover-Letter to The Court to explain the unexpected and inadvertent delay in submitting this Second-Letter to The Court.

*Mahalo nui loa,*

Palani Vaughan, Jr.
Sole-Proprietor, Nākāhili Productions
Probable Creditor
RE: Chapter 11, Muzak Holdings LLC, Debtors,
Case No. 09-10422 (KJC) (Jointly Administered)

### Palani Vaughan, Jr.
Sole-Proprietor, Nākāhili Productions
**Probable Creditor**
RE: Chapter 11, Muzak Holdings LLC, Debtors,
Case No. 09-10422 (KJC) (Jointly Administered)

PO Box 1617
Honolulu, HI 96806
(Cell) 808-330-1733
nakahiliprdctns@aol.com

Friday, October 9, 2009

The Honorable Kevin J. Carey, Chief Judge
US Bankruptcy Court For The District of Delaware,
757 Third Avenue, 3rd Floor, New York, NY 10017

Re: Chapter 11, Muzak Holdings LLC, Debtors, Case No. 09-10422 (KJC) (Jointly Administered);
This Creditor's Review Of, Corrections And Revisions To, And Additional Allegations Of
Claims Originally Alleged Against MUZAK In this Creditor's First Letter Of July 28th, 2009
This Creditor's Reasons For Writing This Second Follow-Up Letter To The Court;
This Creditor's Previously Un-Stated Reason For Late-Filing Of "Proof-Of-Claim";
This Creditor's "Discoveries", Inclusion Of "Creditor EXHIBITS";
This Creditor's Summary;

## I. Introduction & Brief Summation of History of This Creditor's Assertions Re- "Proof-Of-Claim":

**A.** May it please The Honorable Kevin J. Carey, Chief Judge of The United States Bankruptcy
Court For The District Of Delaware, [hereinafter, collectively referred to as, "The Court"],
*Aloha* from Hawai'i and greetings, again, from me, Palani Vaughan, Jr., Sole-Proprietor of
*Nākāhili Productions*, and The Court-Stated "Probable Creditor" [hereinafter, referred to as
"This Creditor"], in Bankruptcy proceedings, Chapter 11, MUZAK Holdings LLC, the
stated Debtors [hereinafter, referred to as "MUZAK"] in Case No. 09-10422 (KJC) (Jointly
Administered), being heard by Your Honor.

**B.** This correspondence is This Creditor's Second Letter to The Court, which This Creditor
had indicated would be forthcoming in the concluding portion of This Creditor's lengthy
13-page, First Letter to The Court, dated July 28th, which This Creditor submitted with The
Court's Required "Proof-Of-Claim" Form.

**C.** As The Court knows, This Creditor is without the representation of counsel, is not an
officer of the court, and has little to no knowledge of Bankruptcy Court Laws, Rules of
Engagement, Argument, or other Protocols, but it is hoped that The Court will not only
accept This Creditor's late-filed "Proof-Of-Claim", but that The Court will view This
Creditor's impassioned assertions with patience, understanding, and objectivity.

**D.** Thus, while This Creditor hopes not to offend The Court, or The Debtor, MUZAK, or MUZAK's representative, EpiqSystems, with any inadvertent comments, or impassioned remarks, however, This Creditor feels that MUZAK, like This Creditor, knows what is "Right", and what is "Wrong", and, therefore, This Creditor asks The Court to please understand that This Creditor has known for **nearly thirty-five years**, [from approximately the year 1974 to this present year of 2009], that This Creditor's "Copyrighted" "Recorded Musical-Tracks", which are "Imbedded" in a total of eight [8] "Master Musical Sound-Recordings", also "Copyrighted" by This Creditor, have been illegally used by the Debtor, MUZAK, without lawful "Licensing-Use Agreements" issued and signed by This Creditor.

**E.** This Creditor, therefore, respectfully asks The Court to grant This Creditor's request for simple justice during these proceedings and, further, asks The Court understanding that This Creditor feels this is finally This Creditor's opportunity to have its "Day-In-Court".

**F.** This Creditor knows that The Court is a US Bankruptcy Court, and, therefore, in This Creditor's layman's view, This Creditor feels a reasonable expectation that, as a United States Federal Court, The Court will assume a responsibility to seriously consider, investigate, and defend This Creditor's claims of "Copyright Infringement" against MUZAK, and, should evidence support This Creditor's allegations, then, This Creditor, will request for appropriate "Remedies", [which "Remedies" This Creditor asks The Court to understand that This Creditor feels are "long in coming"], as provided under United States Copyright Law, which, as The Court knows, is authorized by the U.S. Constitution, under Article 1, Section 8, Clause 8, which is also known as, the Copyright Clause.

**G.** This Creditor is determined to "Assert" and "Define" This Creditor's "Lawful Rights" and urges The Court to, please, "Investigate", "Recognize", "Protect", and "Defend" This Creditor as the "Copyright Owner" of "Copyright-Protected" music properties, generally described below, and which "Copyright Protected" properties, This Creditor shall attempt to provide The Court with reasonable, indisputable evidentiary "Discovery", which This Creditor feels will support This Creditor's "Proof-Of-Claim" in this Second Letter to The Court.

**H.** Thus, for The Court's edification, the following is a general categorical listing of This Creditor's asserted "Copyright-Protected Music" properties, [which are elaborated upon later in this Second Letter], in order to help substantiate This Creditor's "Proof-Of-Claim", as follows:

   1. **"Original Musical Compositions"**, [Written, Copyrighted, and Published by This Creditor];

   2. **"Recorded Musical-Performances"** and **"Recorded Musical Orchestral Arrangements"** of said "Original Musical Compositions", [Written, Copyrighted, and Published by This Creditor], and other "Musical Compositions", which included "Traditional Hawaiian Chants" [which "Chants" are categorized as "Public-Domain"], which This Creditor performed, recorded, produced, and released in a series of "Master Musical Sound-Recordings", in the retail-market for public consumption;

3. **"Recorded Musical-Tracks"**, in which are "Imbedded", said "Musical Performances" of said "Original Musical Compositions" said "Musical and Orchestral Arrangements" of said "Musical Performances" by This Creditor; and

4. **"Master Musical Sound-Recordings"**, which This Creditor attests are eight [8] in total number, having been produced by This Creditor during a period of thirty-five [35] years, beginning in the year 1974 and ending in the year 1999;

## II. <u>This Creditor's Motivation to Address With The Court Previously Un-stated Concerns</u>:

A. This Creditor has attempted to organize all sections of this Second Letter to The Court, in as concise a manner, as This Creditor can achieve, given the extreme limitations of This Creditor's Legal abilities.

B. At this point of this Second Letter to The Court, This Creditor feels strongly-motivated to make an added opening statement, regarding a previously unstated reason for the late-filing of This Creditor's "Proof-Of-Claim", on which This Creditor elaborates under the sub-section, **1.**, below, and for which previously unstated reason, This Creditor respectfully requests that The Court grant This Creditor a "Deadline-Extension" for the late-filed "Proof-Of-Claim".

C. This Creditor also, under sub-section **2..**, below, asks The Court's assistance, in an unanticipated matter, which This Creditor feels may threaten This Creditor's status as a "Probable Creditor", which perceived threat This Creditor senses in an unforeseen action made in a written Court-Filed statement by MUZAK's representative agent, which is known to This Creditor and to The Court as, EpiqSystems, which unforeseen statement relates to This Creditor's late-filed "Proof-Of-Claim", and which said written statement made by EpiqSystems to The Court, This Creditor addresses under the Section, **IV.**, below.

1. <u>**This Creditor's Brief Reflective Overview Of Challenges Previously Stated & An Un-Stated Reason For The Court's Final Review, Re-This Creditor's Late-Filing Of "Proof-Of-Claim" & This Creditor's Second Request For An Extension of "Proof-Of-Claim" Filing Deadline**</u>:

   a. This Creditor has the hopeful belief, that, in the name of, and in the pursuit of, truth, fair-play and justice, The Court will recognize that This Creditor's inability, [during the months of June and July], to meet The Court-designated "Proof-Of-Claim" deadline of July 2nd, was due to the numerous challenges that This Creditor faced at the time that This Creditor received The Court's mailed Notification of This Creditor's status as a Probable Creditor in said MUZAK Bankruptcy case.

   b. Said numerous challenges to This Creditor already have been presented and described to The Court in This Creditor's First July 28th Letter to The Court, which said challenges were varied in nature, some being personal, others being business-related, while others were and continue to be directly related to legal active Court Cases being heard in Hawai'i State Courts, and still others also were, and continue to be, legal in nature, relating to This Creditor's Trusteeship oversight

responsibilities relating to the financial-affairs and the 24/7 medical-care of This Creditor's dementia-afflicted [Alzheimer's Type] 89-year-old father.

**c.** As The Court is already aware, This Creditor was without legal-counsel, and had missed the "Proof-Of-Claim" filing deadline of July 2nd, when This Creditor attempted to request a filing extension, which said filing-extension, This Creditor attempted to seek via an e-mail communication sent, first, to The Court, and, later, to EpiqSystems, representating the debt consolidation interests of The Court Debtor, MUZAK.

**d.** In a courtesy return phone-call to This Creditor's business/personal cell-phone at 808-330-1733, an Unidentified Representative from EpiqSystems at phone-number [860] 249-7122, left a voice-mail message for This Creditor, on Monday, July 20, 2009, at 7:16AM, informing This Creditor that EpiqSystems has no authority to grant This Creditor an extension but advised This Creditor to file the "Proof-Of-Claim", anyway, which EpiqSystems would mark as late.

**e.** Said voice-mail message from the Un-indentified Representative from EpiqSystems, further informed This Creditor, that, in the case that This Creditor's said late-filed "Proof-Of-Claim" were objected to by EpiqSystems, that, This Creditor, then, could write to The Court to request said extension of said filing-deadline for said "Proof-Of-Claim" filing, and provide The Court with This Creditor's explanations, as to the reasons for the late-filing of said "Proof-Of-Claim", and hope that The Court would view This Creditor's said reasons for said late-filing, as reasonable and acceptable.

**f.** This Creditor, therefore, in this Second Letter to The Court, once again, respectfully requests from The Court, said extension of the July 2nd Court-designated deadline for This Creditor's filing of said "Proof-Of-Claim" and is hopeful that The Court will grant said extension.

**g.** In support of This Creditor's renewed request for an extension of the "Proof-Of-Claim" deadline, This Creditor has decided to submit in this Second Letter to The Court, one final explanation of an incident which was the source of such deep concern and extreme embarrassment to This Creditor, that it caused This Creditor worry and anxiety, so much so, that, for more than any other reason, was the primary cause for This Creditor being completely distracted from reading through The Court's Notification, which resulted in This Creditor overlooking the "Proof-Of-Claim" filing deadline of July 2nd.

**h.** Said final reason, revolves, ashamedly, around This Creditor's 36-year-old second-born son, and the father of two [2] minor sons, residing in Oregon with their mother, and which second-born son was incarcerated in our State of Hawai'i Correctional Center, [at about the time that This Creditor received The Court's mailed Notification at PO Box 1617, Honolulu, Hi 96806], and in whose said second son's defense, This Creditor worked together with the Court-appointed Public-Defender to develop a defense strategy.

**i.** This Creditor, [as this second-born son's only surviving parent], became entirely involved, which defense effort, fortunately, succeeded in said second-son's conditional probationary release, but whose post-release situation became a two-month ordeal for This Creditor, who informed said second-born son, that This Creditor could not continue to "bail-out" said second-born son, financially and otherwise, as This Creditor is committed to sustaining the program of 24/7 care for This Creditor's said 89-year-old dementia-afflicted father.

**j.** It is This Creditor's hope that The Court will accept This Creditor's above final explanation of the incarceration of This Creditor's second-born son as an acceptable reason for causing the late-filing of This Creditor's "Proof-Of-Claim" with The Court.

2. **This Creditor's Objection To EpiqSystems' Recent Disturbing Court-Filed Statement Re- This Creditor's Late-Filed "Proof-Of-Claim" & This Creditor's Request That The Court Grant Filing Extension:**

**a.** Recently, This Creditor received written notification from EpiqSystems indicating, in one [1] of two [2] documents, delivered by US Mail to This Creditor's business PO Box 1617, Honolulu, HI 96806, that This Creditor **failed to identify a "Debtor"** in This Creditor's July 28th filing of "Proof-Of-Claim" with The Court.

**b.** This Creditor was surprised by EpiqSystems statement, since The Court had indentified This Creditor, as a Probable Creditor, but also identified Muzak Holdings LLC, as the Debtors.

**c.** This Creditor has admitted to The Court a total lack of knowledge of Court-related procedural protocols and/or rules of Court-engagement in these bankruptcy matters, and, despite This Creditor's inability to find or to afford legal-counsel, This Creditor, has attempted to respond truthfully and responsibly in filing The Court-required "Proof-Of-Claim".

**d.** This Creditor cannot help but feel that EpiqSystems may be attempting to take advantage of This Creditor's lack of legal-counsel to discredit, and, to possibly, disqualify This Creditor's "Proof-Of-Claim", by asserting that This Creditor has failed to identify a Debtor.

**e.** I would hope that The Court will agree with This Creditor that it is virtually impossible for This Creditor to identify any entity, other than, MUZAK Holdings, LLC as the Debtor of record, because This Creditor has never been able to locate the source of MUZAK's "Use" of This Creditor's "Recorded Musical-Tracks", and it is This Creditor's hope that The Court will feel a moral and legal-obligation to protect This Creditor from being taken advantage by EpiqSystems in this manner.

**f.** This Creditor apologizes to The Court for making the fore-going statements, however, This Creditor cannot help but feel that EpiqSystems may be attempting to distract The Court from looking with favor upon This Creditor's assertions of Copyright Infringement, by placing This Creditor in a precarious position with The

Court by asserting This Creditor's failure to identify a Debtor, which This Creditor views as an intentional defensive strategy on the part of MUZAK to cause The Court to eliminate This Creditor, wrongly, on a technicality, from these bankruptcy proceedings, in order to not be compelled by The Court to pay This Creditor the asserted remedies for Copyright Infringement, as stated clearly under US Copyright Law.

g. Rather than, permitting EpiqSystems to distract The Court with this legal strategy, This Creditor makes this urgent appeal to The Court to help This Creditor to discover the veracity of MUZAK's evidentiary filings, relating to said "Licenses", and, in that regard, **asks The Court to require EpiqSystems and/or MUZAK to produce said "Licensing" documents containing This Creditor's legal signature, as proof of the existence of said "Licenses", because This Creditor, neither has a memory of signing any "Licenses", nor, has any "Licenses" from MUZAK in This Creditor's possession or business files.**

h. In summation, This Creditor appeals to The Court for fairness and asks The Court to grant This Creditor's request for an extension of the July 2nd "Proof-Of-Claim" Filing Deadline, and to, please, allow This Creditor's "Proof-Of-Claim" to be accepted by The Court.

III. **This Creditor's Recent 2-Month Review Of Discovery Research of MUZAK's Evidentiary Filings With The Court Indicating The Existence of LICENSES:**

A. In the two [2] months that have passed since This Creditor's said Court-Filing of This Creditor's said July 28th Letter to The Court, in which said First Letter to The Court, that This Creditor indicated an intention to embark upon a "Discoveries" research, which This Creditor undertook in a "step-by-step" fashion.

B. This Creditor, first, examined MUZAK's Court-Filed Documents which This Creditor accessed on the Inter-Net via EpiqSystems "On-Line" Web-Site, and pursued all other methods of research that became available to This Creditor.

C. At the EpiqSystems On-Line Web-Site, This Creditor reviewed MUZAK's evidentiary submissions with The Court, and to This Creditor's complete surprise, This Creditor found:

1. First, MUZAK's declaration of a **Master Music License**, which is listed under **Docket 295, 1.pdf, Adobe Reader, on Page 20 of 33, of Exhibit B-23, Licenses**; and

2. **Second**, MUZAK's declaration of a **License Agreement-Effective 12/1/1997**, which MUZAK lists near the bottom of **Sheet 142 of 219 Sheets, of SCHEDULE G - "EXECUTORY CONTRACTS AND UNEXPIRED LEASES"**;

D. **This Creditor's On-The-Record Declaration & Request To The Court Re-MUZAK's Claims Of "Music Licenses" In MUZAK'S Possession For The Use Of This Creditor's Copyrighted "Musical Sound-Recordings":**

1. Despite the fact that the Debtor, MUZAK has made the above evidentiary declarations to The Court that MUZAK is in possession of the above described "Licenses", This Creditor asserts that This Creditor has no memory of having ever signed either one of the Licensing Agreements listed in MUZAK's evidentiary declaration, nor are either of these Licenses in This Creditor's possession.

2. This Creditor makes the following declaration for The Court Record, that, under penalty of perjury, This Creditor claims to have <u>no recollection</u> **of ever creating, or of receiving from MUZAK, or of even signing a "License" of any kind with said Debtor, MUZAK during the entire period of years from 1974 to present, let alone, having signed a <u>LICENSE AGREEMENT-EFFECTIVE 12/1/1997</u>,** as listed in MUZAK's evidentiary declaration.

3. This Creditor's personal efforts to conduct evidentiary research, included gathering evidence of MUZAK's use, [for nearly thirty-four [34] years, since the year 1975 to the present year, 2009], of several of the "Recorded Musical-Tracks" that are "Copyrighted" by This Creditor, which This Creditor has physically heard "played" regular frequency over the Public Address [hereinafter referred to as "PA"] systems in certain Honolulu business-buildings, in State of Hawai'i public-buildings, and in Honolulu's largest shopping mall.

4. This Creditor attests for The Court's Record and edification, that This Creditor has produced and has copyrighted a total of eight [8] "Musical Sound-Recordings" from the year 1974 to 1997, [which said 8 "Musical Sound-Recordings", are identified in detail, later and below, in this said Second Letter to The Court], and, which "Musical Sound-Recordings", are at the source of why This Creditor has been recognized by the debtor, MUZAK, and The Court as a Probable Creditor in these bankruptcy proceedings.

5. On the various occasions that This Creditor would hear played over PA systems, any of This Creditor's various and several "Recorded Musical-Tracks", [which, as stated above, are "Recorded Musical-Tracks" "Imbedded" in This Creditor's said [8] "Musical Sound-Recordings"], there were prevailing circumstances, or physical conditions, that would distract, or deter, This Creditor from investigating the source of This Creditor's heard "Recorded Musical-Tracks".

6. For the purposes of presenting evidence of said "Musical Sound-Recordings" in order to help substantiate This Creditor's "Proof-Of-Claim", This Creditor has accumulated and, as stated above, will list below, for The Court's edification, the titles of individual "Recorded Musical-Tracks" to present to The Court as said Evidentiary "Discoveries".

7. While This Creditor intended to find new "Discoveries", Other than the above referenced "Evidentiary Discoveries" researched On-Line at the EpiqSystems Web-Site, This Creditor also discovered a disturbing entry in MUZAK's Court-Filed **Docket 295, Document 1.pdf, Adobe Reader**, which are incorporated into MUZAK's Court-Filed <u>Global Notes</u>, <u>in particular</u>, **paragraph 17.**, in which MUZAK states a qualifying declaration **on pages 6-7**, to which declaration in its' entirety, This Creditor takes exception, in particular, MUZAK's opening sentence, highlighted in bold-type, which This Creditor also:

8. ***The presence of a contract or agreement on Amended Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. Muzak LLC expressly reserves its rights to amend all Schedules and Amended Schedules at a later time as necessary. Muzak LLC further reserves all of its rights, claims and causes of action with respect to the contracts and agreements listed on Amended Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument related to a creditor's claim. In addition, Muzak LLC may have entered into various other types of agreements in the ordinary course of their business, such as subordination, nondisturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements and confidentiality agreements. Such documents may not be set forth on Amended Schedule G. Further, Muzak LLC reserves all rights to alter or amend these Schedules to the extent that additional information regarding the Debtor obligor to such executory contracts becomes available. Certain of the executory agreements may not have been memorialized and could be subject to dispute. Executory agreements that are oral in nature have not been included on Amended Schedule G.***"

9. This Creditor views MUZAK's said "Global Notes" declaration, in these bankruptcy proceedings, as an unconscionable and selfishly self-serving act on the part of the Debtor, MUZAK, to expect The Court to place the Debtor's interests above This Creditor's interests, which This Creditor has repeatedly asserted, as MUZAK's unlawful and reckless and habitual business-practice, over a prolonged 34-year period, of engaging in the "Un-Licensed Duplication" and "Un-Licensed Use" [for MUZAK's own monetary-profit and without any remuneration to This Creditor for said "Un-Licensed Use"], of This Creditor's "Copy-Righted" "Recorded Musical-Performances" of This Creditor's "Original Musical-Compositions", and which "Recorded Musical-Performances" by This Creditor were "Imbedded" by This Creditor in the resulting "Recorded Musical-Tracks" in This Creditor's "Copy-Righted" "Musical Sound-Recordings", which were produced by This Creditor's sole-proprietorship record-label, *Nākāhili Productions*.

10. Further, This Creditor asserts that the Debtor, MUZAK, by and through its "Self-Protective Declaration" and other statements, cited in the above Global Notes, demonstrates, in This Creditor's view, to be, not only, an act of desperation, on the part of MUZAK, but also a further demonstration by MUZAK, as an attempt to remain unaccountable for its alleged reckless and illegal business-practice of engaging in the "Unlicensed & Illegal Use" of This Creditor's "Copyrighted Recorded Musical-Tracks" for an alleged period of, at least, thirty-four [34] consecutive years, and for which illegal business practices, This Creditor adamantly requests The Court to hold MUZAK accountable, under <u>US Copyright Law</u>, for MUZAK's "Infringement" upon the "Lawful Rights" of This Creditor as the **"Copy-Right-Owner" of "Original Musical-Compositions"**, and **"Recorded Musical-Arrangements, Orchestrations, and Performances"**, all of which, as stated above, were **"Imbedded" by This Creditor in the "Recorded Musical-Tracks" of This Creditor's "Copy-Righted" "Musical Sound-Recordings"**.

11. Although This Creditor is requesting The Court to compel MUZAK to produce said Music Licenses, which are referenced above, **under Paragraph C, on page 7, of this letter,** herein, This Creditor, further, requests that even should MUZAK and/or EpiqSystems, somehow, provide and offer for examination, by The Court and This Creditor, of said purported "Licenses" asserted by MUZAK to be in MUZAK's possession, and which "Licenses" contain This Creditor's signature, upon each "License", thereon, This Creditor, additionally requests that The Court require MUZAK to, then, explain to The Court and to This Creditor:

  a. <u>Why</u> This Creditor, as the Sole-Proprietor "Record-Label Owner" of a **total of eight [8] "Master Musical Sound-Recordings"**, [which This Creditor **"Produced"**, **"Recorded"**, **"Released"**, and **"Copy-Right Owned"** between the years 1974-1997], and as the **"Composer"** and **"Music-Publisher"** of said **"Original Musical-Compositions"** used in said **"Copyrighted"** **"Master Musical Sound-Recordings"**, in which are **"Imbedded"** said **"Musical Performances"** of said **"Original Musical-Compositions"**, contained, therein, **<u>has</u> <u>never</u> <u>received</u> <u>any</u> "Licensing Fees"** from MUZAK, as required under **US Copyright Law**, for This Creditor's **"Granting"** of said **"Licenses"**, which **"Licenses"**, MUZAK, in its evidentiary filing with The Court, purports, to have in its possession; and, further,

  b. This Creditor asks The Court to <u>require</u> MUZAK to also explain, if said **"Licenses"** exist, then, why has This Creditor never received neither **"<u>Music Performance Royalties</u>"**, [as This Creditor is the starring Recording-Artist and Musical-Arranger and Orchestrator], <u>nor,</u> <u>received</u> <u>any</u> **"<u>Mechanical Licensing Royalties</u>"**, [as This Creditor is the **"Composer and Music-Publisher"** of This Creditor's **"Original Musical-Compositions"**].

12. This Creditor further requests, that, among other remedies, The Court require MUZAK to pay This Creditor an accumulated total amount of all music-royalties due This Creditor in the various categories listed above by This Creditor.

IV. <u>This Creditor's Review For The Court, Of Past "Discoveries" Presented In this Creditor's Letter To The Court Dated July 28, 2009:</u>

A. **In Said July 28th Letter To The Court, This Creditor Identified Four [4] Long-Playing Record Albums, [herein after referred to by the acronym, "LPs"] Produced And Copyrighted By This Creditor As A "Themed-Series", Entitled:**

1. *"Iā'oe E Ka Lā – Vol. I"*, Created, Produced, Recorded, Copyrighted and Released by This Creditor in the Year 1974;

2. *"Iā'oe E Ka Lā – Vol. II"*, Created, Produced, Recorded, Copyrighted and Released by This Creditor in the Year 1975;

3. **_Iā'oe E Ka Lā – Vol. III_**, Created, Produced, Recorded, Copyrighted and Released by This Creditor in the Year 1977;

4. **_Iā'oe E Ka Lā – Vol. IV_**, Created, Produced, Recorded, Copyrighted and Released by This Creditor in the Year 1980;

**V. This Creditor's Identification Of Individual "Recorded Musical-Tracks", Of "Original Music" Composed By, Published By, And "Musically-Arranged & Orchestrated" By, And "Produced, Recorded, & Copyrighted" By This Creditor, and As Listed By Individually & Consecutively Released Themed Four-Volume Record-Series From The Years 1974-1980:**

**A.** For The Court's review, This Creditor offers the following as re-iterated evidence in support of This Creditor's "Proof-Of-Claim", which is This Creditor's identification of each of the separate individual four [4] volumes of "Musical-Sound Recordings", which were released consecutively, and independently, of each other, during the years 1974-1980, which said "Musical Sound-Recordings", This Creditor "Created", "Produced", "Recorded", and "Released" through This Creditor's said Sole-Proprietorship Record-Label Company, identified above, as, _Nākāhili Productions_.

**B.** This Creditor also states for The Court's attention that This Creditor did, in fact, "Create", "Produce", "Perform", "Copy-Right" and does, solely, "Own" all of the "Musical Arrangements", "Imbedded" in each of the "Recorded Musical-Tracks", which, in turn, are "Imbedded" and "Contained" in the four [4] Volumes of "Musical Sound-Recordings", totaling, forty-four [44] "Recorded Song-Tracks", which said total 44 "Recorded Musical Song-Tracks", only, for these said "Musical Sound-Recordings", only, and not for any other "Musical Sound-Recordings", "Created", "Produced", Recorded", by This Creditor, in later years, from 1985-1997, which This Creditor shall present for The Court's edification, as This Creditor's additional evidentiary support for This Creditor's "Proof-Of-Claim".

1. In addition, This Creditor also wishes To Inform The Court that This Creditor is the Composer of **Thirty-Two [32], Rather Than Twenty-Eight [28], as previously stated, in This Creditor's July 28th Letter to The Court** and is the Author Of **Thirty-One [31], Rather Than Twenty-Eight [28] as previously stated, in This Creditor's July 28th Letter to The Court** of the total of forty-four [44] "Recorded Musical Song-Tracks" "Imbedded" in This Creditor's "Master Musical Sound-Recordings", previously described.

a. This Creditor has also included, under the following sub-paragraph section, entitled, CREDITOR'S EXHIBITS, for The Court's examination in these pleadings, an identification list, herein, of said 44 songs, contained in said Four [4] Volume "Musical Record Series", which This Creditor, entitled, **_Iā'oe E Ka Lā_**,

"Produced", "Copyrighted", and "Released" by This Creditor's said Sole-Proprietorship Record-Label, *Nākāhili Productions*, between said years 1974-1981, and which are listed according to individual "Volumes" of said "Musical Record Series", as follows:

---

## 1) THIS CREDITOR'S EXHIBIT #1: [SEE ATTACHED PHOTO-COPY #1]

### a) Long-Playing RECORD ALBUM, Released 1974:

#### (1) *"IĀ'OE  E  KA L Ā - Vol. I"* – NP-100
[Songs Are Listed Below As Numbered In Actual Recording]
[Songs Listed Are Both The Original Compositions Of This Creditor & Traditional Hawaiian Chants
That Have Been Musically Arranged By This Creditor, As Noted Under The Song-Titles]

4- KAULĪLUAIKEANU (2:50)
(Composed, Arranged, &Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)
(Instrumental by Cyril Lani Pahinui/Copyrighted by Palani Vaughan)

5- KĒLŌ  LIKELIKE (2:57)
(Composed, Arranged, &Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

6- KA'A AHI  KAHULUI (3:05)
(Composed, Arranged, &Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

7- IĀ'OE E KA LĀ (3:26)
(Traditional Hawaiian Chant Composed by Chiefess Nāhinu)
(Musically Arranged & Copyrighted by Palani Vaughan, Jr./Nākāhili Productions)

8- KAULANA IA KA LĀ (2:30)
(Composed, Arranged, &Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

9- PONI MŌ'Ī (3:24)
(Composed, Arranged, &Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

---

## 2) THIS CREDITOR'S EXHIBIT #2: [SEE ATTACHED PHOTO-COPY #2]

### a) Long-Playing RECORD ALBUM, Released 1975:

#### (a) *"IĀ'OE  E  KA L Ā - Vol. II"* – NP-200

[Songs Are Listed Below As Numbered In Actual Recording]
[Songs Listed Are Both The Original Compositions Of This Creditor & Traditional Hawaiian Chants
That Have Been Musically Arranged By This Creditor, As Noted Under The Song-Titles]

2- KU'I  KA LONO (2:19)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

5- NĀ  KUKUI  'UILA (3:08)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

6- WILI!  WILI! (3:29)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

7- <u>KA'IMILOA</u> (2:33)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

[Title Corrected}—> 9- <u>NĀ  KĀNAKA  HOLO  LIO</u> (2:26)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

11- <u>HA'AHEO</u> (4:30)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

---

### 3) <u>THIS CREDITOR'S EXHIBIT #3:</u>  [SEE ATTACHED PHOTO-COPY #3]

### a) <u>Long-Playing RECORD ALBUM, Released 1977:</u>

#### (1) *"IĀ'OE  E  KA L Ā - Vol. III"* – <u>NP-300</u>:
[Songs Are Listed Below As Numbered In Actual Recording]
[Songs Listed Are Both The Original Compositions Of This Creditor & Traditional Hawaiian Chants
That Have Been Musically Arranged By This Creditor, As Noted Under The Song-Titles]

1- <u>LAHAINA-KA'ANAPALI  TRAIN</u>  (3:35)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

2- <u>E KU'U  MAKAMAE</u>  (4:20)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

3- <u>NĀ  MAKAMAKA 'O 'IOLANI</u>  (4:20)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

4- <u>KALAMAKA'A</u>  (3:18)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

5- <u>KA HULIAU 'ANA</u>  (3:25)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

6- <u>BLESS  OUR  HOMELAND  FOREVER</u>  (4:20)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

7- <u>KA  MĀMAKAKAUA</u>  (2:35)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

8- <u>VOICES  ON THE WIND</u>  (3:55)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

9- <u>E  ALA (OLA) KĀKOU</u>  (3:07)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

10- <u>KILIPATI  HULA</u>  (3:40)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

12- <u>NALOHIA  KA  MAKUA</u>  (4:18)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

---

### 4) <u>THIS CREDITOR'S EXHIBIT #4:</u>  [SEE ATTACHED PHOTO-COPY #4]

### a) <u>Long-Playing RECORD ALBUM, Released 1980:</u>

(1) **_"IĀ'OE  E  KA L Ā - Vol. IV" – NP400:_**
[Songs Are Listed Below As Numbered In Actual Recording]
[Songs Listed Are Both The Original Compositions Of This Creditor & Traditional Hawaiian Chants
That Have Been Musically Arranged By This Creditor, As Noted Under The Song-Titles]

1- **KA  MOMI**  (3:11)
(Music Composed & Arranged by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA) (Narrative Performance
by Palani Vaughan of *"Ka Momi"–*"The Pearl" Written By King Kalākaua)

3- **SOLDIERS OF THE ROYAL GUARD**  (3:24)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

5- **HE  MANU 'ULA'ULA**  (3:08)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

6- **HE  PUA  WEHIWA**  (3:55)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

7- **HE  MANU  PĪKAKE**  (2:55)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

8- **TO MA'I HŌ'EU'EU / LILIKO'I**  (3:05)
(Traditional Hawaiian Chants)(Musically Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions)

10- **NĀ  KAMA  KĀNE  O  HAWAI'I**  (3:10)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

11- **FOOTENOTE**  (1:40)
(Music Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

---

VI. **Although Preveiously Un-Stated By This Creditor In Said July 28th Letter To The Court,
This Creditor, Now, , Further Alleges, That MUZAK, Knowingly, or Un-Knowingly,
<u>Committed</u> <u>Additional Infringements</u> Of US Copyright Law, In The Years 1986, 1993,
1996, And 1997,  And Which Infringements Continued From 1986, Un-Abated, To This
Present Year Of 2009, Even As This Creditor Writes This Letter To The Court [Evidence
Of Which Will Be Discussed Below These Evidentiary Sections]:**

A. Which alleged US Copyright Law violations, This Creditor asserts, can be traced to Four
[4] additional "Musical Sound-Recordings", individually "Produced" and "Released", as
Two [2] separate "Themed-Series" by This Creditor's Sole-Proprietorship Record-Label,
*Nākāhili Productions* during the years listed above:

1. **The <u>First</u> of said "Themed-Series" of "Musical Sound-Recordings" were released in
Two [2] Separate "Volumes of Themed Recorded Hawaiian-Music", the <u>First</u>
Volume, released in 1986, and the <u>Second</u> Volume , released eleven [11] years later, in
1997, entitled by This Creditor, *"KAULANA NĀ PUA - Vol. I & Vol. II"*:**

a. **_"KAULANA NĀ PUA - Vol. I"_ - NP-KNP-C100, Released 1986,** the <u>First-Volume</u>
of said "Themed-Series", Musical Sound-Recording, **was released in "Cassette-
Tape" Format <u>only</u>,** and which said "Musical Sound-Recording", [which is
described in more detail, below, under **THIS CREDITOR'S EXHIBIT #5,**
contained six [6] "Original Musical-Compositions", written by This Creditor, as
well as, **five [5] other "Musical Compositions",** for which total number of **Eleven**

[11] **"Musical Compositions"**, all "Musical Arrangements & Orchestrations" were "Created", "Musically Performed", "Recorded", "Produced", "Released", and "Copyrighted", by This Creditor, in the year 1986;

---

1) **THIS CREDITOR'S EXHIBIT #5;**

   a) **CASSETTE-TAPE [Only], Released 1986:**

      (1) *"KAULANA NĀ PUA - Vol. I"* - NP-KNP-C100:

         [Songs are listed below, as numbered in actual recording]:
         [Songs Listed Are Both The Original Compositions Of This Creditor & Traditional Hawaiian Chants That Have Been Musically Arranged By This Creditor, As Noted Under The Song-Titles]

         **Artist**: Palani Vaughan  **Title**: *"Kaulana Nā Pua, Helu 'Ekāhi - Vol. I"*
         **Category**: Traditional Hawaiian Music  **Released**: **1986**



         1- **HE ĀNUENUE O KA LOKOMAIKA'I**  ( : )
            (Composed, Arranged, & Copyrighted by Palani Vaughan/ Nākāhili Productions/ASCAP/NMPA)

         4- **HE MAUNA KANAKA**  ( : )
            (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

         8- **HE INOA NO KIA'ĀINA**  ( : )
            (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

         9- **HE MELE NO MĀIKI**  ( : )
            (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

         10- **E ALA MAI E HA'ALILIO**  ( : )
            (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

         11- **KE ALI'I MILIMILI**  ( : )
            (Traditional Hawaiian *Oli* Chant Composed By King Kalākaua)
            (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**b.** ***"KAULANA NĀ PUA - Vol. II" - NP-KNP-200, Released 1997***, the <u>Second-Volume</u> of said "Themed-Series", Musical Sound-Recording", **was released in "Compact-Disc" Format**, [hereinafter referred to as "CD"], and, which said "Musical Sound-Recording", [which is described in more detail, below, under **THIS CREDITOR'S EXHIBIT #6**, contained **Nine [9] "Original Musical-Compositions"**, written by This Creditor, as well as, **Three [3] other "Musical Compositions"**, for which total number of **Twelve [12] "Musical Compositions"**, all "Musical Arrangements & Orchestrations" were "Created", "Musically Performed", "Recorded", "Produced", "Released", and "Copyrighted", by This Creditor, in the year 1997;

**1)** <u>**THIS CREDITOR'S EXHIBIT #6**</u>;

    **a)** <u>**COMPACT-DISC [CD], Released 1997**</u>:

        **(1)** ***"KAULANA NĀ PUA - Vol. II" - NP-KNP-200, Released 1997***:

          **[Songs are listed below, as numbered in actual recording]:**
          **[Songs Listed Are Both The Original Compositions Of This Creditor & Traditional Hawaiian Chants That Have Been Musically Arranged By This Creditor, As Noted Under The Song-Titles]**

          <u>**Artist**</u>: Palani Vaughan   <u>**Title**</u>: *"Kaulana Nā Pua, Helu ʻElua - Vol. II"*
          <u>**Category**</u>: Traditional Hawaiian Music   <u>**Released**</u>: **1997**



    **2-** <u>I HAMĀKUA I KA UA NOE</u>   **(5:08)**
    (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

    **4-** <u>Medley</u>:   **(4:54)**
    <u>KAʻILIHIWA'S LULLABYE</u>
    (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions / ASCAP/NMPA)
    <u>EO E KAʻILIHIWA</u>
    (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

    **6-** <u>Medley</u>:   **(4:26)**
    <u>IA WAʻA NUI</u>
    (Traditional Hawaiian Chant) (Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions)
    <u>E OLA LOA E HAWAIʻI-LOA</u>
    (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA

7- <u>KAULANA ʻO ʻELEMAKULE</u>  (4:12)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

8- <u>KUKUNA-O-KA-LĀ</u>  (4:53)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

9- <u>E HAHAI IĀ IESŪ KRISTO KA HAKU</u>  (4:00 )
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

10- <u>KUʻU PĒPĒ</u>  (4:02)
(Composed, Arranged, & Copyrighted by Palani Vaughan/ Nākāhili Productions/ASCAP/NMPA)

---

2.  The <u>Second</u> of the said **"Themed Series"**, were released as "Compilation CDs"
[*"Compilation CD" is a "CD" that contains previously-released "Recorded Musical
Song-Tracks", "Re-Released" in a "Compiled-Collection Format"*], in "Two Separate
Volumes Of Music", which This Creditor, entitled, ***"PALANI VAUGHAN'S BEST
WITH THE KING'S OWN - Vol. I"***, **Released in 1993 & *"PALANI VAUGHAN'S
BEST WITH THE KING'S OWN - Vol. II"***, **Released in 1996:**

a.  ***"PALANI VAUGHAN'S BEST WITH THE KING'S OWN - Vol. I"***, **Released 1993**,
the <u>First-Volume</u> of said "Themed-Series", Musical Sound-Recording", **was released
in "Compact-Disc" Format**, [hereinafter referred to as "CD"], and as **"Compilation
CD"**, which said CD "Musical Sound-Recording", [described in more detail, below,
under <u>**THIS CREDITOR'S EXHIBIT #6**</u>, and contained **Twelve [14] "Original
Musical-Compositions"**, written by This Creditor, as well as, **Two [2] other "Musical
Compositions"**, for which total number of **Sixteen [16] "Musical Compositions"**, all
"Musical Arrangements & Orchestrations" were "Created", "Musically Performed",
"Recorded","Produced", "Released", and "Copyrighted", by This Creditor, in the year
1993;

1)  <u>**THIS CREDITOR'S EXHIBIT #7**</u>;

a)  <u>**COMPACT-DISC, Released 1993:**</u>

(1)  ***"PALANI VAUGHAN'S BEST WITH THE KING'S OWN - Vol. I"***,
**[COMPILATION CD]:**
[Songs are listed below, as numbered in actual recording]:
[Songs Listed Are Both The Original Compositions Of This Creditor & Traditional Hawaiian Chants
That Have Been Musically Arranged By This Creditor, As Noted Under The Song-Titles]

<u>**Artist**</u>: Palani Vaughan <u>**Title**</u>: *"Palani Vaughan's Best With the King's Own-Vol. I*
<u>**Category**</u>: Traditional Hawaiian Music <u>**Released**</u>: **1993**



**2- <u>KA'A AHI KAHULUI</u> (3:05)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . I"* , NP-100)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**3- <u>IĀ'OE E KA LĀ</u>  (3:26)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . I"* , NP-100)
(Traditional Hawaiian Chant Composed by Chiefess Nāhinu)
(Musically Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions)

**4- <u>KU'I KA LONO</u>  (2:19)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . II"* , NP-200)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**5- <u>KA'IMILOA</u>  (2:33)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . II"* , NP-200)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**6- <u>NĀ KĀNAKA HOLO LIO</u> (2:49)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . II"* , NP-200)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**7- <u>HA'AHEO</u> (4:30)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . II"* , NP-200)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**8- <u>NĀ MAKAMAKA 'O 'IOLANI</u> (2:08)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . III"*, NP-300)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**9- <u>KA HULIAU 'ANA</u> (3:25)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . III"*, NP-300)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**10- <u>KA MĀMAKAKAUA</u> (2:35)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . III"*, NP-300)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**11- <u>IPO LEI MANU</u>  (4:14)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . III"*, NP-300)
(Traditional Hawaiian Chant Composed by Her Majesty Queen Kapi'olani)
(Musically Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions)

**13- <u>HE MANU 'ULA'ULA</u>  (3:08)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . IV"*, NP-400)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**14- <u>HE PUA WEHIWA</u>  (3:55)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . IV"*, NP-400)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**15- <u>HE MAUNA KANAKA</u> (  :  )**
(Original "Recorded Musical-Track" From *"Kaulana Nā Pua - Vol. I"*, NP-KNP-C-100)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**16- <u>E ALA MAI E HA'ALILIO</u>  (3:27)**
(Original "Recorded Musical-Track" From *"Kaulana Nā Pua - Vol. I"*, NP-KNP-C-100)
(Composed, Arranged & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

---

**b.** ***"PALANI VAUGHAN'S BEST WITH THE KING'S OWN - Vol. II"*, <u>Released
<u>1996</u></u>, the <u>Second-Volume</u> of said "Themed-Series", Musical Sound-Recording",

was released in **"Compact-Disc" Format**, [hereinafter referred to as "CD"], and as **"Compilation CD"**, which said CD "Musical Sound-Recording", [described in more detail, below, under **THIS CREDITOR'S EXHIBIT #8**, and contained **Twelve [12] "Original Musical-Compositions"**, written by This Creditor, as well as, **Four [4] other "Musical Compositions"**, for which total number of **Sixteen [16] "Musical Compositions"**, all "Musical Arrangements & Orchestrations" were "Created", "Musically Performed", "Recorded", "Produced", "Released", and "Copyrighted", by This Creditor, in the year 1996;

2) **THIS CREDITOR'S EXHIBIT #8**;

   b) **COMPACT-DISC, Released 1996**:

      (1) ***"PALANI VAUGHAN'S BEST WITH THE KING'S OWN - Vol. II"***, **[COMPILATION CD]**:

        [Songs are listed below, as numbered in actual recording]:
        [Songs Listed Are Both The Original Compositions Of This Creditor & Traditional Hawaiian Chants That Have Been Musically Arranged By This Creditor, As Noted Under The Song-Titles]

        **Artist**: Palani Vaughan **Title**:*"Palani Vaughan's Best With the King's Own-Vol. II"*
        **Category**: Traditional Hawaiian Music **Released**: **1996**



      **2- KĒLŌ ʻO LIKELIKE (2:57)**
      (Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . I"*, NP-100)
      (Composed, Arranged, &Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

      **3- PONI MŌʻĪ (3:24)**
      (Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . I"*, NP-100)
      (Composed, Arranged, &Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

      **5- NĀ KUKUI ʻUILA (3:08)**
      (Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . II"*, NP-200)
      (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

      **6- E KUʻU MAKAMAE (4:20)**
      (Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . III"*, NP-300)
      (Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**7-** **VOICES ON THE WIND** **(3:55)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . III"*, NP-300)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**8-** **E ALA (OLA) KĀKOU** **(3:07)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . III"*, NP-300)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**9-** **NALOHIA KA MAKUA** **(4:18)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . III"*, NP-300)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**10-** **KA MOMI** **(3:11)**
(Original "Recorded Musical-Track" From *"Kaulana Nā Pua - Vol. IV"*, NP-KNP-C-400)
(*"Ka Momi"* Music Composed & Arranged by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)
(*"Ka Momi"*–"The Pearl" Written By King Kalākaua/ Narrative Performance by Palani Vaughan)

**11-** **NĀ KAMAKĀNE O HAWAI'I** **(3:10)**
(Original "Recorded Musical-Track" From *"Iā'oe E Ka Lā-Vol . IV"*, NP-400)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**14-** **HE ĀNUENUE O KA LOKOMAIKA'I** **( : )**
(Original "Recorded Musical-Track" From *"Kaulana Nā Pua - Vol. I"*, NP-KNP-C-100)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**15-** **HE INOA NO KIA'ĀINA** **( : )**
(Original "Recorded Musical-Track" From *"Kaulana Nā Pua - Vol. I"*, NP-KNP-C-100)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

**16-** **KE ALI'I MILIMILI** **( : )**
(Original "Recorded Musical-Track" From *"Kaulana Nā Pua - Vol. I"*, NP-KNP-C-100)
(Composed, Arranged, & Copyrighted by Palani Vaughan/Nākāhili Productions/ASCAP/NMPA)

---

**V. This Creditor's List Of Alleged US Copyright Infringements Committed By MUZAK, Un-Abated, For The Past Thirty-Four [34] Consecutive Years, Beginning On, Or About, The Year 1975 To The Present Year 2009:**

**A. For Which Alleged Additional Violations, This Creditor Re-Iterates His Appeal Made In This Creditor's Said July 28th Letter To The Court To Grant This Creditor The Remedies Provided Under US COPYRIGHT LAW For Violations Which This Creditor Alleges Were Committed By MUZAK In Three [3] Different Ways:**

**1. FIRST – For MUZAK's "MASTER USE MUSIC-LICENSING" Violations:**

    **a.** For MUZAK'S Unlawful, "Unlicensed Duplication And Use" Of Said "Recorded Music-Tracks" "Imbedded" In This Creditor's "Copy-Righted" "Master Musical Sound-Recordings", as "Listed" and "Indentified" in This Creditor's said First Letter to The Court Of July 28th, 2009, which "Listings" are repeated in This Second Letter to The Court, the discussion of which can be found under, **THIS CREDITOR'S EXHIBITS #1-#4**, on **Pages 9-13**, with "Photo-Copies" of This Creditor's said "Musical Sound-Recordings" printed, therein, as well as, another set of Exhibits, found in this Second Letter to the Court, herein, above, under **THIS CREDITOR'S EXHIBITS #5-#8**, on **Pages 13-19,** also, above, herein, with

"Photo-Copies" of additional "Musical Sound-Recordings", produced and released by This Creditor, "Attached" at the end of This Second Letter to The Court;

2. **SECOND - For MUZAK's Unlawful and "Unlicensed Use" of This Creditor's Said "Recorded Musical-Tracks"** Through MUZAK's Well-Publicized Methods Of "Pre-Recorded-Music" "Delivery" To Various Public And Private Buildings, Shopping Malls, Airports, And Many Other Facilities, Where Pre-Recorded Music Is Provided By MUZAK For Certain Unstipulated Fees Paid By The Building Facilities' Owners and/or Managing-Operators;

3. **THIRD – For MUZAK's Failure To Report Its' "Public Performance" "Uses" Of This Creditor's "Recorded Music-Tracks" In Said Public And Private Business Facilities**, which said "Uses" by MUZAK are considered under US Copyright Law to be:

   a. **"Public Performances"**;

      1) **Which Said "Public Performances" Are Required To Be Reported To A.S.C.A.P., Or American Society of Composers, Authors, & Publishers**:

         a) **In Which Song-Writer / Song-Publisher Organization, This Creditor is both**:

            (a) A **"Writer-Member"**; And

            (b) A **"Music-Publisher Member"**;

         b) **And For Which Said "Pubic Performances"**, This Creditor Should Have been entitled to receive a portion of The "Public Performances" Royalties Collected By A.S.C.A.P. from MUZAK, for the period of Thirty-Four [34] Years from the year 1975 to this present year of 2009, which This Creditor asserts is the alleged period of MUZAK's "Un-Licensed Use" of This Creditor's "Recorded Musical-Tracks";

4. **FOURTH – For MUZAK's MECHANICAL-LICENSING" Violations**:

   a. **MUZAK'S failure to acquire from This Creditor the required "Mechanical Licensing Agreements" for**:

      1) The Use of This Creditor's "Original Musical-Compositions", "Written And Published" by This Creditor resulting in MUZAK's "Unlawful And Unlicensed Use" of This Creditor's "Copyrighted" "Original Musical-Compositions";

VI. **This Creditor's Reason For Writing This 2nd Follow-Up Letter To The Court, As Discussed Above, Relating To This Creditor's Personal "Discovery Research", Which Intent To Conduct Said Further "Discovery Research", This Creditor's Stated In This Creditor's July 28th First Letter To The Court**:

A. **DISCOVERY #1** - [MUZAK / EPIQSYSTEMS Court-Filed EXHIBIT]

1. As discussed, above, on **Page 6**, is a re-iteration of "Discovery" findings:

   a. <u>**SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES,**</u> **Sheet 142 of 219 sheets:**

      1) MUZAK Lists This Creditor With The Correct Business Mailing Address of **P.O. BOX 1617, HONOLULU, HI 96806; and**

      2) MUZAK Lists **LICENSE AGREEMENT EFFECTIVE DATE 12-1-97,** Under The Heading:

         a) **DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST - STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY – STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT.**

            (1) As stated, above, This Creditor denies the existence of any "LICENSING AGREEMENT EFFECTIVE DATE 12-1-97";

B. <u>**DISCOVERY #2**</u> - [MUZAK / EPIQSYSTEMS EXHIBIT]

   1. <u>**From This Creditor's Examination Of MUZAK's Exhibit Dockets Filed With The Court, Listed Under:**</u>

      a. <u>**EXHIBIT B23 - LICENSES**</u>, **Page 21 of 33:**

         1) MUZAK Lists This Creditor, **"Nakahili Productions"**, Under The Column-Heading Identified As, **LICENSE NAME;**

         2) MUZAK Lists **"Master Music License"**, Under The Column-Heading Identified As, **DESCRIPTION;**

            a) <u>**This Creditor Denies The Existence Of:**</u>

               (1) **"LICENSING AGREEMENT EFFECTIVE DATE 12-1-97";**

               (2) **If The Court Were to Follow The Presumption, and were to accept** <u>**MUZAK's**</u> **Asserted** <u>12-1-97</u> **"Date Of Alleged Licensing", then, the above** <u>Various</u> **<u>Music-Performance Royalties</u>, would have been "Generated from said "Master Music License" and, This Creditor, therefore, would have derived, beginning with said "Date of 12-1-97" "Purported Licensing" by MUZAK, to the present date, of October 2009, [which This Creditor asserts computes to a Twelve [12] Year period of purported "Licensed Use" Of This Creditro's "Un-Identified" "Musical Compositions", which The Court may reasonably presume to, perhaps, be one [1] of the two [2] latest "Musical Sound-Recordings", "Produced" by This Creditor in the year's 1995 and 1997;**

                  (a) **However, while MUZAK may assert that a MASTER MUSIC LICENSE exists, This Creditor disputes that claim, despite**

MUZAK's Court-Filed Exhibit, <u>SCHEDULE G –1EXECUTORY</u> <u>CONTRACTS AND UNEXPIRED LEASES</u>, **Sheet 142 Of 219** **Sheets Declaring the Existence of said License from The Date 12-01-97 to present;**

(b) And as asserted earlier in This Second Letter to The Court, This Creditor contends that MUZAK's alleged "Un-Licensed Use" of This Creditor's "Master Music Sound-Recordings" began from a much earlier date, perhaps, as early as, the year, 1975;

C. <u>DISCOVERY #3</u> – [Based Upon Physical Hearing Of This Creditor's Recorded Music]

1. <u>This Creditor Identifies "PHYSICALLY HEARD" "Recorded Musical-Tracks", as</u> <u>previously referenced and stated in This Creditor's July 28th First Letter To The</u> <u>Court:</u>

   a. Re-**Page 10 of 13** of said July 28th Letter To The Court:

   1) *"Five days later, on Wednesday, July 22nd @ 7:02PM, this creditor received a cell-phone text- message from a friend, who was waiting for an out-going flight at H.I.A., and who was familiar with this Creditor's recorded music, as well as, with this Creditor's original musical compositions."*

   2) *"The text message stated, in part, "At the airport and they just played Na Kukui Uila for the music".*

   3) This Creditor can specifically identify said "Original Musical-Composition" referred to, above, as, ***"Nā Kukui Uila"***, which This Creditor "Composed" and originally released in 1975 in the "LP" Record Series, Entitled, ***"Iā'oe E Ka Lā-Vol. II"***;

   a) ***"Nā Kukui Uila"*** is **"Cut" #5**, or **"Recorded Music-Track" #5** of this LP, and can be found above, on **Page 11**, of This Second Letter to The Court, under <u>THIS CREDITOR'S EXHIBIT #1</u>;

   b) Approximately, Twenty-one [21] years later, in 1996, This Creditor "Re-Released said, "Recorded Musical-Track" of ***"Nā Kukui Uila"***, on the Second "Compilation CD", "Produced" by This Creditor, and referenced earlier, above, entitled, ***"Palani Vaughan's Best With The King's Own-Vol. II"***, and can be found above, on **Page 18**, of This Second Letter to The Court, under <u>THIS CREDITOR'S EXHIBIT #8</u>;

2. <u>This Creditor Identifies Additional "PHYSICALLY HEARD" "Recorded</u> <u>Musical-Tracks":</u>

   a. **This Creditor Wishes To Identify More Songs** To This Creditor's "List Of PHYSICALLY HEARD" "Recorded Musical Song-Tracks", which are heard over PA Systems played in several "Public and Private Buildings" in and around, Honolulu, as well as, throughout the neigh boring islands of the State of Hawai'i,

primarily, at the various airports, operated by the State of Hawai'i, Department of Transportation, as described in This Creditor's July 28th Letter to The Court;

1) **Therefore, This Creditor wishes to inform The Court that This Creditor has "Physically-Heard" the following "Recorded Musical Song-Tracks"**, which This Creditor definitely identifies as This Creditor's "Copy-Righted Property", such as, "Recorded Musical-Tracks", entitled:

    a. *"He Inoa No Kia'āina"*, heard at Honolulu International Airport;

    b. *"Kelo 'O Likelike"*, heard at the Ala Moana Shopping Center, and Honolulu International Airport;

    c. *"Ka'a Ahi Kahului"*, heard at Honolulu Club, private athletic club, on Wad Ave., Honolulu, HI, approximate membership 3,000-4,000 members; heard at Honolulu International Airport and Ala Moana Shopping Center;

    d. *"Ku'i Ka Lono"*, heard at Honolulu International Airport, Ala Moana Shopping Center;

    e. *"Nā Kukui 'Uila"*, heard at Honolulu International Airport, Ala Moana Shopping Center;

    f. *"He Mauna Kanaka"*, heard at Honolulu International Airport, Ala Moana Shopping Center;

    g. *"He Inoa No Kia'āina"*, heard at Honolulu International Airport, Ala Moana Shopping Center; Honolulu Club, private athletic club, on Wad Ave., Honolulu, HI, approximate membership 3,000-4,000 members;

2) This Creditor, in sharing the matter of this bankruptcy case with mutual business-associates and acquaintances, has been informed by said associates and acquaintances that they have "Physically-Heard" This Creditor's "Recorded Musical Sound-Tracks", identified above, at the Honolulu International Airport and in various business-establishments and restaurants, one restaurant being identified by This Creditor's acquaintances was a surprise to this Creditor:

    a) "Jack In The Box";

## VII. This Creditor's History With Negotiating Licensing-Agreements:

### A. This Creditor Is Experienced In Licensing Negotiations:

1. It is important for The Court to be informed that This Creditor is familiar with "Licensing Negotiations" and has concluded various "Licensing Agreements" over the several past and recent years with several various **"Licensees"**, some of whom were:
   a. **"Record-Label Companies"**, operating within the State of Hawai'i; and

   b. **"Record-Label Companies"**, located beyond Hawai'i's island-shores, such as,:

      1) New York City-Based, **SONY BMG**, for Client, ***"Starbucks Coffee"***, with whom This Creditor successfully negotiated both:

         a) A **"Mechanical License"**, for This Creditor's **"Original Musical-Composition"**, entitled, ***"Ka Māmakakaua"***, which is included in the various lists of several various **"Original Musical-Compositions"** **"Copy-Righted"** by This Creditor detailed for the Court, above, under, **THIS CREDITOR'S EXHIBITS #1- #8**; and,

         b) A **"Master Music-License"** for the **"Licensing-Right"** to **"Duplicate"** and **"Imbed"** the **"Recorded Musical-Track"** of said **"Original Musical-Composition"** in its CD products for **SONY BMG's** client, **"Starbucks Coffee"**;

         c) Both **"Licenses"** with **SONY BMG**, remain active.

   c. **"Film and Television Production Companies"**, located in Hawai'i; and

   d. **"Film and Television Production Companies"**, located beyond Hawai'i's island-shores, in particular, one major **"Film and Television Production Company"**, named, **Universal Studios**, with whom This Creditor negotiated a **"Synchronization License"**, in which, This Creditor **"Bundled"**, This Creditor's **"Mechanical Licensing Rights"**, **"Master-Use License Rights"**, and **"Musical Performance Rights"**; for This Creditor's **"Original Musical-Composition"**, entitled, ***"He Pua Wehiwa"***, which was "Imbedded" in Universal Studios' nationally-syndicated Television-Show:

      1) ***"Magnum P.I."***; and,

   e. In one particular instance, which occurred approximately **four [4] years ago,** a particular [Un-Named] **"Film and Television Production Company"**, associated with one of the [Un-Named] **Major Television Networks**, was identified in a **"Class-Action Suit"** brought against said [Un-Named] **Major Television Network**, which produced and aired day-time **"Soap-Operas"**, entitled:

      1) ***"General Hospital"*** and ***"All My Children"***, in which:

    **a)** Certain **"Episodes"** of Said **"Soap-Operas"**, were **"Imbedded"**, with, as many as, **six [6]** of This Creditor's **"Copy-Righted" "Recorded Musical-Tracks"**, which it was determined by the Court, had been **"Unlawfully Duplicated"** from **four [4]** of This Creditor's themed **"Master Sound-Recordings"**, entitled, ***"Iā'oe E Ka Lā"***, [which said **"Master Sound-Recordings"** are identified, listed, detailed, above, under **Pages 10- 13**], and, for which, **"Un-Licensed Use"**, said [Un-Named] **Major Television Network**, was compelled by the Court to pay This Creditor [Un-Named] **"Remedies"**.

## VIII. This Creditor's Final Statements:

### B. This Creditor's Asks The Court's Assistance:

1. As the Court knows, This Creditor remains without counsel, and in This Creditor's quest to determine This Creditor's rights, discussed this case with a knowledgeable business-acquaintance, who, is familiar with "Chapter 11, Bankruptcy", and who urged This Creditor to ask The Court the following question:

    **a.** **Should MUZAK fail to produce** said **"Master Licenses"**, which MUZAK claims to have in its possession, then, does the absence of said **"Licenses"** in MUZAK's possession, mean that MUZAK has committed "fraud"?

This Creditor apologizes to The Court for any inadvertent errors in grammar, "typos", inconsistencies, miss-spellings, and redundancies, and for any inappropriate remarks, assertions, or conclusions that may have inadvertently offended The Court, and for which offenses This Creditor hopes that The Court will understand and attribute to, not only, This Creditor's lack of legal-skills and knowledge of the law and court-procedure and protocols, but also to This Creditor's heightened anxiety in the undertaking This Creditor's own legal-representation, as well as, This Creditor's continuing obligation to fulfill the various ongoing demands of multi-tasking in the various arenas of responsibilities previously described in these letter communications with The Court, the most significant of which is the status of This Creditor's 87-year-old father's health, and the uncertain status of This Creditor's second-born son, whose on conditional probationary-release from prison, also remains an uncertain situation .

This Creditor is continuously balancing his responsibilities to family matters, business interests, and community-affairs, and asks, only, that The Court render a just and fair remedy settlement of This Creditor's asserted "Claims", which "Claims" This Creditor has described and detailed, above, to the best of This Creditor's abilities, as to recalling past events, and as to relating the status current of past and present events that relate directly to this Creditor's business-interests as a "Song-Writer", "Music-Publisher", "Record-Label Owner", and "Song & Music-Licensor", and which "Claims", This Creditor reasserts are based upon protection under US Copyright Law.

This Creditor has attempted to satisfy all the requirements of The US Bankruptcy Court, and therefore, This Creditor also submits to The Court, a second, up-dated, Form 10, "Proof-Of-Claim", and, which, Form 10, is attached to this Second Letter to The Court, in an effort to satisfy the latest written-statement submitted to The Court by EpiqSystems' [on behalf of the Debtor], that, in This Creditor's original July 28th submitted Form 10, This Creditor did not identify a Debtor, which said statement to The Court, This Creditor has expressed objection.

With this Second Letter to The Court, This Creditor awaits Your Honor's and The Court's response.

*Mahalo nui loa,*

Palani Vaughan, Jr.
Sole-Proprietor, Nākāhili Productions, Creditor

**THIS CREDITOR'S EXHIBIT #3:** **["LP" PHOTO #3],** Re-October 10, 2009 Letter To the Court Of The Honorable Kevin J. Carey, Chief Judge, US Bankruptcy Court For The District of Delaware, 757 Third Avenue, 3rd Floor, New York, NY 10017, By This Creditor, Palani Vaughan, Jr. Sole-Proprietor, Nākāhili Productions, **Probable Creditor,** PO Box 1617, Honolulu, HI 96806, (Cell) 808-330-1733, nakahiliprdctns@aol.com.

RE: **Chapter 11, Muzak Holdings LLC, Debtors, Case No. 09-10422 (KJC) (Jointly Administered)**



NĀKĀHILI PRODUCTIONS

Presents

Palani Vaughan sings in honor of Hawai'i's King David Kalākaua as he fondly recalls the "Kamiano" of the Renaissance Monarch

**THIS CREDITOR'S EXHIBIT #4:**      **["LP" PHOTO #4],**     Re-October 10, 2009 Letter To the Court Of
**The Honorable Kevin J. Carey, Chief Judge, US Bankruptcy Court For The District of Delaware, 757 Third Avenue, 3rd
Floor, New York, NY 10017, By This Creditor, Palani Vaughan, Jr. Sole-Proprietor, Nākāhili Productions, Probable Creditor,**
PO Box 1617, Honolulu, HI 96806, (Cell) 808-330-1733, <u>nakahiliprdctns@aol.com</u>,
**RE: Chapter 11, Muzak Holdings LLC, Debtors, Case No. 09-10422 (KJC) (Jointly Administered)**

